# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: NNN 400 CAPITOL CENTER 16 LLC, *et al.*, | : | Chapter 11 |
| | : | Bankr. No. 16-12728-JTD |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | Adv. No. 18-50384-JTD |

| | | |
|---|---|---|
| RUBIN & RUBIN, P.A., | : | Civ. No. 20-1260-CFC |
| | : | Civ. No. 20-1262-CFC |
| Appellant, | : | Civ. No. 20-1266-CFC |
| v. | : | |
| | : | |
| OFFICE OF THE UNITED STATES TRUSTEE, *et al.*, | : | |
| | : | |
| Appellees. | : | |

| | | |
|---|---|---|
| RUBIN LAW ASSOCIATES, P.A., | : | Civ. No. 20-1261-CFC |
| | : | Civ. No. 20-1267-CFC |
| Appellant, | : | |
| v. | : | |
| | : | |
| OFFICE OF THE UNITED STATES TRUSTEE, *et al.*, | : | |
| | : | |
| Appellees. | : | |

## **OPINION**

September 29, 2021
Wilmington, Delaware

*Coh  J.  Cy*

CONNOLLY, UNITED STATES DISTRICT JUDGE

Appellant[1] Rubin & Rubin, P.A. ("Rubin & Rubin" or "R&R") has appealed

two separate sanctions orders issued by the Bankruptcy Court: (1) Order re Motion

for Clarification (Adv. D.I. 810), dated September 4, 2020 ("Clarification Order"),

---

[1] By filing duplicate notices of appeal – in both the main chapter 11 case (No. 16-12728-JTD) and in the Adversary Proceeding (Adv. No. 18-50384-JTD) – and by listing multiple orders in each notice of appeal, Appellants have needlessly complicated these proceedings, creating confusion and additional work for the parties and Court.  (*See* Civ. Nos. 20-1260-CFC, 20-1261-CFC, 20-1262-CFC, 20-1266-CFC, 20-1267-CFC).

Rubin & Rubin filed a notice of appeal in the Adversary Proceeding listing both the Clarification Order and the Disqualification Order, generating the appeals at Civ. Nos. 20-1260-CFC and 20-1266-CFC.  Rubin & Rubin filed a separate notice of appeal listing both the Clarification Order and Disqualification Order in the chapter 11 case, generating the appeal at Civ. No. 20-1262-CFC.

Rubin Law Associates, P.A. ("RLA") filed two notices of appeal with respect to the Disqualification Order.  RLA's notice of appeal filed in the Adversary Proceeding generated the appeal at Civ. No. 20-1261-CFC, and its separate notice of appeal filed in the chapter 11 case generated the appeal at Civ. No. 20-1267-CFC.

RLA filed a separate opening brief in support of its appeals (Civ. No. 20-1261-CFC, D.I. 27) ("RLA Op. Brief") from that of Rubin & Rubin, P.A. (Civ. No. 20-1260, D.I. 29) ("R&R Op. Brief").

Lender-Appellees' answering brief (Civ. No. 20-1260, D.I. 31) ("Lender Brief") addressed all of the R&R appeals and the RLA appeals.  (*See id.* at 1 n.1).

The United States Trustee filed separate answering briefs with respect to the R&R appeals (Civ. No. 20-1262-CFC, D.I. 33) ("UST R&R Brief") and the RLA appeals (Civ. No. 20-1261-CFC, D.I. 30) ("UST RLA Brief").  An identical appendix was filed with respect to each of the UST's answering briefs, and it is cited herein as "A__."

R&R filed separate replies to the Lender Brief (20-1260-CFC, D.I. 37) ("R&R Lender Reply") and the UST R&R Brief (Civ. No. 20-1262-CFC, D.I. 41) ("R&R UST Reply").

RLA filed its own reply to the UST RLA Brief (Civ. No. 20-1261-CFC, D.I. 37) ("RLA UST Reply").

which sets a deadline for the payment of certain sanctions previously ordered in the August 9, 2019 Memorandum Order (Adv. D.I. 247-1) ("Fee-Shifting Order")—as modified by the October 9, 2019 Order (Adv. D.I. 302, 303) ("Reconsideration Order")—in connection with false and/or materially incomplete disclosures regarding Rubin & Rubin's retention as special litigation counsel to Debtors under 11 U.S.C. § 327(e); and (2) the Memorandum Opinion and Order, dated September 4, 2020 (Adv. D.I. 811) (together, "Disqualification Order"), which disqualified Rubin & Rubin from serving as Debtors' counsel under § 327(e), denied Rubin & Rubin's fees, and directed Rubin & Rubin to return payments to Debtors.  Appellant Rubin Law Associates, P.A. has also appealed the Disqualification Order.  Both Orders are final,[2] and the Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1).  The Court will affirm the Orders.

## I.  BACKGROUND

### A.  The Parties

"Rubin & Rubin, P.A." is a fictitious trade name used by the combination of Rubin Law Associates, P.A. ("RLA"), which is a law firm owned by Guy B. Rubin, Esq., and "I Mark Rubin P.A.," a law firm owned by Guy Rubin's brother Mark

---

[2] *See, e.g., Ferrara & Hantman v. Alvarez (In re Engel)*, 124 F.3d 567, 571 (3d Cir. 1997) (affirming order denying special counsel fees, without addressing finality); *In re Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis)*, 113 F.3d 1040, 1043-44 (9th Cir. 1997) (order directing attorney to return fees was final); *In re BH&P, Inc.*, 949 F.2d 1300, 1306-07 (3d Cir. 1991) (order disqualifying attorney was final).

Rubin, Esq. (A277-A278). Guy and Mark Rubin have practiced law using the firm name "Rubin & Rubin" for almost 30 years. (A260; *see also* A266 (declaration of Mark Rubin stating that in its representation of Debtors "Rubin & Rubin, P.A. has acted as a single law firm, which it is").[3]

Debtors are 32 tenant-in-common entities created to acquire an ownership interest in an office building in Little Rock, Arkansas ("Property"). The Property secured a loan. Debtors failed to repay that loan, and foreclosure proceedings were initiated. Debtors filed for chapter 11 bankruptcy protection on December 9, 2016 after refinancing attempts failed.

### B.  Retention of Rubin & Rubin

On December 20, 2016, Debtors filed an application to employ Rubin & Rubin to serve as special counsel under § 327(e) to, among other things, advise Debtors regarding the foreclosure action and refinancing efforts, "including the retention and management of experts for such services[.]" (A236-A237). Debtors originally retained Rubin & Rubin in April 2016, to assist in their pre-petition refinancing effort. (A240). In his statement in support of the application, Mark Rubin stated that Rubin & Rubin had no connections with any creditors or other parties in interest. (A247). He further stated that, other than requesting to have the

---

[3] As Guy Rubin has described it: "clients in general seek out and retain Rubin & Rubin as a firm," "the only website [he and Mark Rubin] use . . . holds us out jointly to the public as members of Rubin & Rubin," and Guy Rubin's "loyalties, and those of all staff members[,] runs through Rubin & Rubin." (A274).

bankruptcy estate pay for its services and expenses, Rubin & Rubin had "no proposed arrangement to compensate [it]" and "ha[d] not . . . agreed to share . . . any compensation another person or party has received or may receive." (A249-A251).

On March 1, 2017, the Bankruptcy Court authorized Rubin & Rubin's employment. (A254-A257). At no time during the bankruptcy cases have Appellants sought or obtained court authorization to employ Guy Rubin, Mark Rubin, RLA, or I. Mark Rubin, P.A. to serve as special counsel under § 327(e) separately from Rubin & Rubin. Throughout the chapter 11 cases, Rubin & Rubin filed fee applications in the name of "Rubin & Rubin, P.A.," and the Bankruptcy Court's orders allowed compensation to "Rubin & Rubin, P.A." (*See* LA0080, LA0409, LA0192, LA0555, LA0260, LA0453, LA0506, LA0252, LA0256, LA0335, LA600).[4] Mark and Guy Rubin sought and obtained admission *pro hac vice* in the Bankruptcy Proceedings, and signed certifications identifying their law firm as "RUBIN AND RUBIN, P.A." (LA0039, LA0372).

On April 13, 2018, Debtors filed a complaint against the Lender-Appellees[5] and Somera Road, Inc., initiating the Adversary Proceeding. (Adv. D.I. 1).

---

[4] The Appendix to the Lender Brief (Civ. No. 20-1260-CFC, D.I. 30) is cited herein as "LA__."

[5] Lender-Appellees are five of the six defendants in the Adversary Proceeding: Wells Fargo, N.A., in its capacity as Trustee for the Registered Holders of Comm 2006-C8 Commercial Mortgage Pass Through Certificates; Berkadia Commercial Mortgage, LLC ("Berkadia"); LNR Partners, LLC; Little Rock-400 West Capitol Trust; and Taconic Capital Advisors L.P. The sixth defendant is Somera Road, Inc.

Thereafter, Lender-Appellees learned that "Rubin & Rubin, P.A." is a fictitious trade name. (A277-A278). On May 21, 2019, Lender-Appellees deposed Mark Rubin in connection with the Adversary Proceeding, and he testified that: (1) Rubin & Rubin is a trade name under which Mark and Guy Rubin operate their law firms, I. Mark Rubin, P.A. and RLA; (2) I. Mark Rubin, P.A. and RLA have an oral agreement to work together on the bankruptcy cases; and (3) I. Mark Rubin, P.A. and RLA are "affiliated" for purposes of the bankruptcy cases. (LA1278, LA1283, LA1286, LA1307 at 18:10-17, 20:3-16, 32:21-25, 117:16-20).

Lender-Appellees raised these disclosure issues with the Bankruptcy Court on June 19, 2019; the Bankruptcy Court asked the parties to brief the "serious" issue of "what representations were made to the Court regarding the retention of Rubin & Rubin" also asked the UST to "weigh in." (LA1369-40 ("6/19/2019 Tr.") 20:25-21:13). Lender-Appellees filed a motion (Adv. D.I. 211 & 212) ("Show Cause Motion") seeking an order for a rule to show cause why Rubin & Rubin should not be disqualified from serving as counsel to Debtors and required to disgorge its fees in connection with its failure to disclose the fee-sharing arrangement between I. Mark Rubin, P.A. and RLA. Lender-Appellees argued that, if Rubin & Rubin did not exist as a separate firm, then I. Mark Rubin, P.A. and RLA violated the prohibition against fee-sharing. 11 U.S.C. § 504. In response, Debtors argued that I. Mark Rubin, P.A. and RLA "have held themselves out as a partnership—and not as individual entities—for the past thirty years under the Rubin & Rubin banner."

(Adv. D.I. 216 at 3).  Debtors also stated that: (i) neither component firm "has its own website or email domain"; (ii) they both use Rubin & Rubin's website and email address; (iii) Guy and Mark Rubin are identified as partners on Rubin & Rubin's website; and (iv) "[a]s far as the public is concerned, they are both 'Rubin & Rubin, P.A.'"  *Id.*  Debtors further argued that, as "of counsel" to Rubin & Rubin, Guy Rubin was essentially a "member" of Rubin & Rubin for fee-sharing purposes. (Adv. D.I. 216 at 10-11).

Mark Rubin filed a supporting declaration stating under penalty of perjury that "[in] representing the Debtors in this matter both pre- and post-petition, Rubin & Rubin, P.A. has acted as a single law firm, which it is."  (A266).  Guy Rubin filed a declaration stating under penalty of perjury that: (i) he is "of counsel" to Rubin & Rubin (A271); (ii) his "skills and experience as a trial attorney are part of the services that the firm [Rubin & Rubin] provides to its clients" (A272); and (iii) and "[his] loyalties . . . run[] through Rubin & Rubin" (A273).

The Bankruptcy Court held a hearing on the Show Cause Motion on July 23, 2019 ("Show Cause Hearing").  (Adv. D.I. 240 ("7/23/2019 Tr.")).  One of the Debtors' attorneys, Eric D. Freed, affirmatively represented to the Court at this hearing that: "[t]hroughout the course of this representation Rubin & Rubin has functioned as a single law firm.  It is a single law firm."  (*Id.* at 26:13-15).

## C.     The Fee Shifting Order

On August 9, 2019, the Bankruptcy Court entered an order (Adv. D.I. 247)

("Fee-Shifting Order") finding that "[t]he [§ 327(e)] retention application and verified statement made no mention that Rubin & Rubin, P.A. was a fictitious trade name, nor did it identify any of the firms that operate under the Rubin & Rubin umbrella." (A278). The court further found that, "as a matter of longstanding practice, the two firms regularly represent themselves to the public as Rubin & Rubin, which is the name displayed outside of the office building." (A282). The court concluded that, although they are "two distinct legal entities, . . . the two firms operating as Rubin & Rubin are for all intents and purposes a partnership, with fee sharing among its partners, I. Mark Rubin, P.A. and [RLA]" (*Id.*) As a result, the court held that RLA and I. Mark Rubin, P.A. did not violate § 504 by sharing the fees Rubin & Rubin received for its work as Debtors' special counsel. (*Id.*) The court found, however, that Mark and Guy Rubin should have disclosed the existence of their firms and Rubin & Rubin's fictitious name status, and explained that "[t]he duty to disclose under Rule 2014 is so important that the failure to disclose is an independent ground for disqualification and/or disgorgement of fees." (A280). The court did not disqualify Rubin & Rubin at that time because it concluded that Mark and Guy Rubin were "not accustomed to the stringent disclosure requirements mandated by the Bankruptcy Rules." (A280-A281). The court directed Mark and Guy Rubin to "update the required disclosures to provide full and accurate information" and to "pay the Defendants' attorneys' fees and costs in bringing [the Show Cause] Motion." (A282). Mark Rubin filed a supplemental declaration in

which he stated under penalty of perjury that, among other things, Rubin & Rubin is

"a partnership of law firms," and he and Guy Rubin "operate under the umbrella of

Rubin & Rubin as a partnership of their respective professional associations."

(A285).

### D.    The Reconsideration Order

On August 23, 2019, Rubin & Rubin filed a limited motion for

reconsideration of the Fee Shifting Order (Adv. D.I. 259) ("Reconsideration

Motion"), arguing that the fee-shifting sanction was not authorized because of a

"lack of due process provided" and that the court was not authorized to assess such

sanctions pursuant to its inherent authority absent a finding of bad faith or deliberate

misconduct.  Following briefing (Adv. D.I. 271, 280), on October 9, 2019, the

Bankruptcy Court issued the Reconsideration Order, in which the court

acknowledged that it could not impose fee-shifting sanctions pursuant to its inherent

authority absent a finding of bad faith or deliberate misconduct.  The court imposed

the same fee-shifting sanctions against Rubin & Rubin however under § 105 of the

Bankruptcy Code (and in the alternative under Bankruptcy Rule 9011).  The court

rejected the argument that Rubin & Rubin was not afforded due process, noting that

"[e]very issue relevant to the Court's imposition of sanctions was addressed in the

[Show Cause Motion] briefing and at the July 23rd hearing" and Rubin & Rubin

"had ample notice and opportunity to be heard on the issues relevant to the

sanctions."  (Adv. D.I. 302 at 6).

### E.   The Clarification Order

On October 23, 2019, Rubin & Rubin filed a motion for clarification of the

Reconsideration Order (Adv. D.I. 322) ("Clarification Motion"), in which its sole

request was that the Bankruptcy Court permit Rubin & Rubin to pay the fee-shifting

sanctions after the final disposition of the Adversary Proceeding.  On September 4,

2020, at the close of the Adversary Proceeding, the Bankruptcy Court entered the

Clarification Order (Adv. D.I. 810), directing Rubin & Rubin to pay the fee-shifting

sanction within 30 days.

### F.   The Disqualification Motion and Hearing

On January 30, 2020, the UST filed a motion seeking, among other relief, to

terminate Rubin & Rubin's employment under § 327(e) and deny all fees for

services rendered in Debtors' cases (Adv. D.I. 564) ("Disqualification Motion).  The

UST stated that, during the Adversary Proceeding, Mark Rubin testified about pre-

and post-petition fee-sharing agreements Rubin & Rubin had with Seth Denison, a

loan broker engaged to find a lender for Debtors' refinancing efforts.  (*Id.* at 5-7 &

16-18).  The UST argued that "counsel who shares a broker's fee would have a

financial incentive to limit its search/negotiations to existing lenders from which

counsel would get a cut of the broker's fee … even if a new lender proposed better

terms." (*Id.* at 17).   The UST further argued that, because it never disclosed these

agreements, Rubin & Rubin violated the disclosure requirements of the Bankruptcy

Code and Rules.  (*Id.* at 19-22).  The UST argued that, as partial performance of the

post-petition agreement, Mark Rubin facilitated Debtors' payment of $11,400 to
Denison without court authorization.  (*Id*. at 16-17).

Based on these revelations, the UST argued that: (i) Rubin & Rubin's
employment under § 327(e) should be "revoke[d] or terminate[d]" (*id*. at 23, 26) so
that it would be "disqualified from serving as an estate fiduciary" (*id*. at 25, citing
*United States v. Miller*, 624 F.2d 1198 (3d Cir. 1980)); and (ii) Rubin & Rubin's
fees should be denied in full and any fees already received should be returned (*id*. at
23-24, 26 (citing *Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena
Corp.)*, 63 F.3d 877 (9th Cir. 1995) & (citing *Mapother & Mapother, P.S.C. v.
Cooper (In re Downs)*, 103 F.3d 472 (6th Cir. 1996)).

Lender-Appellees joined the Disqualification Motion arguing: (a) Rubin &
Rubin failed to disclose its pre-petition representation of Newmark Moses Tucker
Partners ("Moses Tucker"), one of Debtors' largest unsecured creditors; (b) even
after entry of the Fee-Shifting Order, Rubin & Rubin failed to supplement its
disclosures to include its fee-sharing agreements with Denison and its representation
of Moses Tucker; and (c) Rubin & Rubin violated several of the Model Rules of
Professional Conduct ("RPCs"), including those relating to conflicts of interest and
candor to the tribunal.  (B.D.I. 459).

Rubin & Rubin argued in response that: (1) the pre-petition fee-sharing
agreement was not a "binding," "exclusive," "written," "enforceable" or
"contractual obligation" and was "subject to several important conditions" (B.D.I.

458 at 2-3); (2) the pre-petition agreement was no longer extant when Debtors filed

for bankruptcy protection (*id.* at 5); (3) there was no "formal" post-petition fee-

sharing agreement and any commission to Denison was contingent upon court

approval (*id.* at 6-7); (4) Debtors' payment to Denison was an "ordinary course

expenditure" (*id.* at 12); (5) "revoking the retention of Rubin & Rubin and

disallowing any fees would be inequitable in the extreme" (*id.* at 13); (6) "Rubin &

Rubin never represented [Moses Tucker]" (B.D.I. 547 at 6); and (7) Rubin & Rubin

did not violate any RPCs (*id.* at 12-16).  Neither RLA nor Guy Rubin in his personal

capacity filed any pleading requesting that, if the court were inclined to grant the

Disqualification Motion, it exclude RLA from the effect of the order.

On July 29 and 30, 2020, the Bankruptcy Court held a two-day evidentiary

hearing on the Disqualification Motion.  (A287-A653 & A654-A852

("Disqualification Hearing")).  Mark Rubin testified that: (i) Rubin & Rubin had

prior experience serving as special counsel in a chapter 11 case (A393 at 106:1-12);

(ii) Rubin & Rubin had no post-petition fee-sharing agreement with Denison (A474-

A476 at 187:23–189:2); and (iii) Rubin & Rubin never represented Moses Tucker

(A494-A496 at 207:21–209:19).  No evidence or argument was presented on behalf

of RLA or Guy Rubin regarding being treated separately from Rubin & Rubin in

connection with the Disqualification Motion.

The Bankruptcy Court made several evidentiary rulings.  It admitted into

evidence, over Rubin & Rubin's objection, transcripts of the deposition and

Adversary Proceeding trial testimony of Lori McGhee of Moses Tucker (A314-322 at 27:12–35:17 & A329-A338 at 40:3–41:1) and two depositions of Denison, including his trial transcript from the Adversary Proceeding (A329-A338 at 42:1–51:3). Mark Rubin's testimony from the Adversary Proceeding was admitted without objection. (A338-A343 at 51:4–56:6). The court excluded the testimony of Thomas Francella, Esq., Debtors' § 327(a) bankruptcy counsel because he had refused to appear for a deposition. (A356-A384 at 69:24–97:19).

### G.    Disqualification Order

On September 4, 2020, the Bankruptcy Court issued the Disqualification Order (A853-A873), finding that Rubin & Rubin's witness testimony regarding its agreement with Denison and representation of Moses Tucker contradicted prior testimony given in the Adversary Proceeding (A856-A857 & A859-A860) and "lack[ed] all credibility" (A858, A860 & A862). The court found that Rubin & Rubin had undisclosed agreements "both pre- and post-petition" with Denison (A856, A858, A866, A867-A869 & A872). The court found that, in the pre-petition agreement, Rubin & Rubin had agreed to receive 50% of any commission Denison received (A856), and in the post-petition agreement, Rubin & Rubin had agreed to receive 30% of any commission he received (A858). The court rejected as "untenable" the argument that, because they were not "formal written agreement[s]," these agreements did not have to be disclosed, due to the "undisputed" fact that "Denison and Rubin & Rubin had a mutual understanding

12

that they would share Denison's Commission[.]" (A869). The court further found that the post-petition agreement "runs afoul of section 327(e)" because Rubin & Rubin thereby "acquired a pecuniary interest adverse to the Debtors" that could potentially lead it to "favor deals that Denison found over other brokers to the potential detriment of the estate" (A869-A870 & A872). The court found Rubin & Rubin's failure to disclose its pre- and post-petition fee-sharing agreements with Denison violated § 329(a) and Bankruptcy Rule 2016(b). (A867-A869 & A872).

The court also found that Rubin & Rubin's arguments regarding its representation of Moses Tucker were "without merit" (A863), and that Rubin & Rubin's failure to disclose its connections to both Moses Tucker and Denison violated § 327(e) and Bankruptcy Rule 2014(a). (A859-A864, A872 & A873). The court found that the failure to disclose continued even after the Fee-Shifting Order directed Mark and Guy Rubin to update Rubin & Rubin's disclosures to provide all necessary information (A856, A859-A860, A861 & A869) and that Mark Rubin's verified statement filed in support of Rubin & Rubin's § 327(e) employment application contained false sworn statements regarding its pre-petition representation of creditors and fee-sharing agreements (A854, A861 & A873).

The court further found that the post-petition fee-sharing agreement with Denison violated RPC 1.8(a) because Rubin & Rubin had acquired a pecuniary interest adverse to Debtors yet failed to obtain Debtors' informed consent or advise them to seek advice from other counsel (A869-A872). The court rejected Rubin &

13

Rubin's argument that its pre-petition retention agreement with Debtors embodied their informed consent because: (i) the agreement "neither explain[ed] nor mention[ed] the agreement to share the Denison Commission"; (ii) the record contained no evidence that Debtors were advised to seek the advice of independent counsel; and (iii) the pre- and post-petition fee-sharing agreements with Denison arose after Rubin & Rubin and Debtors entered into the retention agreement, and so "could not have been in the contemplation of the Debtors when they agreed to Rubin & Rubin's representation." (A871-A872).

In addition, the court found that, regarding the post-petition fee-sharing agreement, Mark Rubin directed Denison not to communicate with Debtors' bankruptcy counsel. (A857-A858). The court also found that "one of the deal points" in that agreement was the reimbursement of Denison's "personal funds used to cover due diligence costs" for a potential lender he identified. (A858-A859). The court further found that the potential lender returned $3,600 to Denison, and that Denison was paid the remaining $11,400 "from the [debtor-in-possession] account without prior approval from the Court."[6] (A859). The court found that this "further

---

[6] Under 11 U.S.C. § 363(b)(1), a chapter 11 debtor in possession must obtain court authorization before using bankruptcy estate funds outside of the ordinary course of business. Similarly, under 11 U.S.C. § 363(c)(2), a chapter 11 debtor in possession cannot use a creditor's cash collateral (as defined in 11 U.S.C. § 363(a)) without either obtaining the creditor's consent or prior court authorization. And, under 11 U.S.C. § 503(b)(1)(A), "the actual, necessary costs and expenses of preserving the estate" can only be paid after court authorization.

14

evidences the existence of the [post-petition fee-sharing] agreement." (A869). The court determined that, "since [Mark] Rubin intentionally cut lead bankruptcy counsel out of any discussions with Denison, [Mark] Rubin is the only person who would have known about the agreement, and the only one who could have directed that the payment be made out of the Debtors' [debtor-in-possession] account." (A859). As a result, the Bankruptcy Court concluded that "Rubin & Rubin caused the Debtors to pay the expenses of [Denison] in partial satisfaction of its improper fee sharing agreement." (A872).

Based on these findings, the Bankruptcy Court: (a) disqualified Rubin & Rubin from serving as Debtors' special counsel; (b) ordered Rubin & Rubin to return "all fees and expenses [it had been] paid . . . in connection with its representation of the Debtors"; (c) ordered that Rubin & Rubin would not receive any fees and expenses "in connection with  its representation of the Debtors"; and (d) ordered Rubin & Rubin to reimburse Debtors for the $11,400 it had instructed Debtors to pay to Denison without court authorization. (A873). It appears undisputed that Rubin & Rubin has never returned the fees and expenses.

## H.    The Appeals

Rubin & Rubin has appealed the Clarification Order (and "all related underlying orders, including …. [Adv.] D.I. 247 [Fee Shifting Order]") and the Disqualification Order. RLA appealed the Disqualification Order.

15

## II.   Standard of Review and Applicable Statutes

### A.   Standard of Review

The bankruptcy court's legal conclusions are reviewed de novo, and its factual findings are reviewed for clear error. *In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 470 (3d Cir. 1998). A finding is clearly erroneous if it either is completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data. *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1223 (3d Cir. 1995). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985).

The decision to disqualify an attorney employed under § 327 is reviewed for abuse of discretion. *Marvel*, 140 F.3d at 470. The decision to deny fees and order the return of money to the bankruptcy estate is also reviewed for abuse of discretion. *Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253, 257 (3d Cir. 1995). The decision to admit or exclude evidence is also reviewed for abuse of discretion. *See United States v. Mathis*, 264 F.3d 321, 326-27 (3d Cir. 2001).

A court abuses its discretion where its decision "rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *Marvel*, 140 F.3d at 470 (internal quotation omitted). "Under the deferential abuse of discretion standard," a decision can only be reversed if "no

16

reasonable person would adopt the [bankruptcy] court's view." *In re VistaCare Grp., LLC*, 678 F.3d 218, 232 (3d Cir. 2012) (internal quotation omitted).

### B.    Applicable Statutes

#### 1.    Employment of Special Counsel for a Chapter 11 Debtor

In a chapter 11 case, unless a trustee is appointed under § 1104 of the Bankruptcy Code, the debtor serves as a "debtor in possession" with many of the powers granted to a trustee.  11 U.S.C. §§ 1101(1), 1107 & 1108.  These include the ability to obtain court permission to "employ, for a specified special purpose, other than to represent the [debtor in possession] in conducting the case, an attorney[7] that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed."  11 U.S.C. § 327(e).  A debtor in possession seeking court permission to employ any professional person[8] must file an application disclosing, among other things, "the name of the person to be employed," "any proposed arrangement for compensation," and "all of the person's connections with the debtor, creditors, [and] any other party in interest[.]" Fed. R. Bankr. P. 2014(a).  The application must be accompanied by the professional person's verified statement disclosing all "connections with the debtor,

---

[7] "The term 'attorney' means attorney, professional law association, corporation, or partnership, authorized under applicable law to practice law."  11 U.S.C. § 101(4).
[8] "The term 'person' includes individual, partnership, and corporation."  11 U.S.C. § 101(41).

creditors, [and] any other party in interest[.]" *Id.* This applies not only to connections in existence when the bankruptcy petition is filed, but also to those attained post-petition. *See, e.g., Rome v. Braunstein*, 19 F.3d 54, 57-58 (1st Cir. 1994); *see also* Del. Bankr. L.R. 2014-1(a).

### 2.    Duty to Disclose Compensation Agreements

Every attorney employed by a debtor must disclose "the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the [bankruptcy] petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation." 11 U.S.C. § 329(a); *see also* Del. Bankr. L.R. 2016-1. The disclosure must "includ[e] whether the attorney has . . . agreed to share the compensation with any other entity" and "the particulars of any such . . . agreement to share." Fed. R. Bankr. P. 2016(b). An initial disclosure must be filed "within 14 days after the order for relief," and "[a] supplemental statement shall be filed . . . within 14 days after any . . . agreement not previously disclosed." *Id.*

### 3.    Ability to Receive Compensation

Compensation for legal services rendered is awarded under § 330(a) of the Bankruptcy Code. An attorney seeking such compensation must first be employed under § 327. The court may award less than the amount requested and may order the return of any interim compensation that exceeds the amount of final compensation the court ultimately awards. 11 U.S.C. § 330(a)(2) & (5). The court

may deny compensation if, at any time during its employment, the professional "represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed." 11 U.S.C. § 328(c).

If the bankruptcy court awards compensation after a noticed hearing, the attorney then has an administrative expense and can be paid from the bankruptcy estate. 11 U.S.C. §§ 330(a), 503(b)(2) & 507(a)(2). An attorney not employed under § 327, however, cannot be paid from the bankruptcy estate for services rendered to the debtor in possession. *See, e.g., Lamie v. U.S. Trustee,* 540 U.S. 526, 534 (2004); *F/S Airlease II v. Simon,* 844 F.2d 99, 107 (3d Cir. 1988).

## III.   DISCUSSION

### A.   Rubin & Rubin's Appeal of the Fee-Shifting Order

The Fee-Shifting Order directed Rubin & Rubin to supplement the disclosures mandated by the Bankruptcy Code and Rules "to provide full and accurate information" and awarded costs in the amount of $238,000—*i.e.*, the fee-shifting sanction—pursuant to the court's inherent authority to supervise professionals appearing before it. (Adv. D.I. 247-1 at 7). In the Reconsideration Motion, Rubin & Rubin "accept[ed] responsibility for the incomplete disclosures," but challenged the sanction of fees and costs in bringing the Show Cause Motion because that motion "did not seek relief in the form of an award of attorneys' fees and costs" and "an order for relief not requested, and for which notice was not provided ... lacks due process ...". (Adv. D.I. 259 at 2, 4). In the Reconsideration Order, the court

19

agreed that it could not impose fee-shifting sanctions under its inherent authority without a finding of bad faith. (Adv. D.I. 302 at 3). The court determined that it had authority to impose fee-shifting sanction under both § 105(a) and Bankruptcy Rule 9011 and issued the sanctions (in a reduced amount). (*See id.* at 3-6).

Rubin & Rubin argues on appeal that (1) the Bankruptcy Court did not provide notice of its intent to enter the Fee-Shifting Order pursuant to Rule 9011; and (2) the court lacked authority to enter the Fee-Shifting Order under § 105(a). (R&R Op. Br. 9-18). Lender-Appellees argue that, because Rubin & Rubin did not raise either argument before the Bankruptcy Court, those arguments are waived. (*See* Lender Br. 29 (citing *In re Phila.*, 418 B.R. at 575 n. 27)). Even assuming these arguments were not waived, they are rejected.

### 1.    Sanctions Under Bankruptcy Rule 9011

The Bankruptcy Court correctly held that it had authority to sanction the disclosure violations under Bankruptcy Rule 9011. Sanctions under Rule 9011 do not require a finding of bad faith. As the court noted, the imposition of Rule 9011 sanctions requires only "objectively unreasonable conduct." *Fellheimer*, 57 F.3d at 1225; *see also In re Palumbo Family P'ship*, 182 B.R. 447, 475 (Bankr. E.D. Va. 1995) ("[t]he standard for determining whether a document is well grounded in fact is one of "objective reasonableness"). And factual omissions may be sanctionable under Rule 9011 when the omitted facts are material to the case. *Palumbo,*182 B.R. at 475. The court found that the Rubin & Rubin's conduct was, at minimum,

negligent. (*See* Adv. D.I. 247-1 at 6). Having found negligent conduct, which is, by definition, objectively unreasonable conduct, the court determined that sanctions under Rule 9011 were appropriate.[9]

### 2.     Sufficient, Advance Notice and Opportunity to be Heard

"Prior to sanctioning an attorney, a court must provide the party to be sanctioned with notice of and some opportunity to respond to the charges." *Fellheimer*, 57 F.3d at 1225. The notice requirement of due process must be particularized, meaning the "notice will usually require notice of the precise sanctioning tool that the court intends to employ." *Id.* at 1225. The reason for the particularized notice requirement is to put "a party … on notice as to the particular factors that he must address if he is to avoid sanctions." *Id.* (quoting *Jones v. Pittsburgh Nat'l Corp.,* 899 F.2d 1350, 1357 (3d Cir. 1990)).

It is clear Rubin & Rubin "was provided with sufficient, advance notice of exactly which conduct was alleged to be sanctionable"—its defective Rule 2014 disclosures. *Fellheimer,* 57 F.3d at 1225-26. It is also clear from the record that Rubin & Rubin was given an opportunity to be heard. *Id.* at 1227. Rubin & Rubin

---

[9] Rubin & Rubin argues that the Bankruptcy Court lacked authority to impose fee-shifting sanctions under § 105 absent a finding of bad faith. (R&R Op. Br. 13-18). Section 105 does not, on its face, contain any bad faith requirement. 11 U.S.C. § 105(a). Rubin & Rubin concedes that the Third Circuit Court of Appeals "appears to not yet have opined on whether" monetary sanctions pursuant to § 105 require a finding of bad faith (RR Op. Br. 29). Finding no error in the court's determination to award sanctions under Rule 9011, the Court will not address § 105.

argues only that it was not provided with particularized notice of the "precise sanctioning tool" to be employed—specifically, the award of Lender-Appellees' attorney's fees—because the Show Cause Motion did not specifically seek relief under Rule 9011 and fee shifting was not available under the court's inherent authority absent a finding of bad faith.

Indeed, particularized notice requires that a party is "on notice as to the particular factors that he must address if he is to avoid sanctions," and "[g]enerally speaking, … will usually require notice of the precise sanctioning tool that the court intends to employ." *Fellheimer*, 57 F.3d at 1225. Rubin & Rubin appears to argue that because it did not know that Rule 9011 might be employed, it did not know that the fee-shifting under Rule 9011(c) was a possible sanctioning tool, and thus it did not have the opportunity to address the "particular factors" required to avoid the imposition of fees. Rubin & Rubin never identifies the "particular factors" that it did not have an opportunity to address below, however, and the Court finds this line of argument unavailing.

On June 19, 2019, the Bankruptcy Court raised "serious" concerns regarding the disclosure issues and suggested that the Lender-Appellees file a motion for an order to show cause. Lender-Appellees filed the Show Cause Motion on July 2, 2019, which was fully briefed prior to the July 23, 2019 hearing on the Show Cause Motion. The Show Cause Motion requested that the court take certain actions against Rubin & Rubin that clearly amount to sanctions—disqualification as

22

counsel, revocation of fee applications, disgorgement of fees, and "any necessary and related relief"— all of which were within the court's authority to impose. (Adv. D.I. 211 at 1-2; Adv. D.I. 212 at 11-19). Rubin & Rubin had over six weeks to brief the Show Cause Motion and attended a lengthy hearing to address the merits of the Show Cause Motion. Rubin & Rubin had ample notice and opportunity to be heard on the factors relevant to the fee-shifting sanction.

**B.     Rubin & Rubin's Appeal of the Disqualification Order**

### 1.  The Bankruptcy Court Did Not Abuse its Discretion by Disqualifying Rubin & Rubin

The Bankruptcy Court found that Rubin & Rubin held an interest adverse to Debtors and the bankruptcy estate due to the fee-sharing agreement with Denison. The court also found that Rubin & Rubin failed to comply with the requirements to disclose all fee agreements under § 329(a) and Rule 2016(b) and all connections with creditors and parties in interest under § 327(e) and Rule 2014(a). The court further found that Rubin & Rubin obtained a pecuniary interest adverse to the estate without complying with RPC 1.8(a). The Bankruptcy Court did not abuse its discretion in disqualifying Rubin & Rubin on any of these bases.

#### a.  Violation of § 327(e)

A law firm may not serve as special counsel to a chapter 11 debtor in possession if it "represent[s] or hold[s] any interest adverse to the debtor or to the estate with respect to the matter on which [it] is to be employed." 11 U.S.C. §

327(e). A law firm found to possess such an adverse interest during the case may be disqualified, at the court's discretion. *See, e.g., Rome*, 19 F.3d at 58; *BH&P*, 949 F.2d at 1315. If a law firm is found to have an actual conflict of intertest, disqualification is mandatory. *In re Congoleum*, 426 F.3d 675, 692 (3d Cir. 2005).

The Bankruptcy Court made the following findings regarding whether Rubin & Rubin held an adverse interest under § 327(e): in September 2016, Rubin & Rubin "engaged the services of Denison . . . to assist with identifying a lender to refinance the [Debtors'] loan" (A855); Rubin & Rubin had a pre-petition agreement with Denison whereby it would receive 50% of any commission he received (A855-A857); "after the bankruptcy filing, Rubin & Rubin re-engaged Denison to assist in securing financing" (A857); "Denison emailed [Mark] Rubin . . . seeking to enter into an agreement for a 1.25% broker fee" they previously discussed (*id.*); Mark Rubin responded that there was no agreement and any broker fee would be subject to court approval (A858); "Less than a week later, Denison emailed [Mark] Rubin summarizing an agreement . . . to reimburse Denison for the $15,000 of his personal funds used to cover due diligence costs for" a potential lender he produced, "and an agreement to split any fee with [Mark] Rubin 70/30, with 70% going to Denison" (*id.*); "on January 9, 2019, [Mark] Rubin caused the Debtors to reimburse Denison for his outstanding out-of-pocket due diligence expenses" (A859); "Denison and Rubin & Rubin had a mutual understanding that they would share Denison's Commission . . . thus, they had an agreement" (A869); "Debtors['] reimbursement

of Denison's expenses further evidences the existence of the [post-petition]

agreement" (*id.*); and the payment of Denison's expenses was "in partial satisfaction

of [the] improper fee sharing agreement" (A872).

Rubin & Rubin argues that the above findings are erroneous. According to

Rubin & Rubin, the Bankruptcy Court improperly disregarded the testimony of

Mark Rubin and Dennison in support of its argument that there was no agreement to

share fees with Denison. (*See* R&R Op. Br. at 22-26). However, where there is

more than one way to view the evidence the one chosen by the bankruptcy court

"cannot be clearly erroneous." *Anderson*, 470 U.S. at 574. Here, the court found

that "neither [Mark] Rubin's nor Denison's testimony [was] credible." (A858).

Findings "based on determinations regarding the credibility of witnesses" are

afforded "even greater deference," and "can virtually never be clear error."

*Anderson*, 470 U.S. at 575. The Court finds ample support in the record for the

findings, and they are not clearly erroneous. *See Fellheimer*, 57 F.3d at 1223.

The Court finds no error of law in the Bankruptcy Court's application of §

327 to these facts. Under § 327(e), special counsel must "not represent or hold any

interest adverse to the debtor or to the estate with respect to the matter on which the

attorney is to be employed." "[A]ttorneys retained in bankruptcy proceedings are []

required to meet the restrictions imposed by section 327." *Congoleum*, 426 F.3d at

688-89. Although the Bankruptcy Code does not define "adverse interest," the

Third Circuit examines the phrase in terms of whether an attorney has a potential or

actual conflict of interest that could interfere with its representation of the estate. *See id.* at 689-91. The court has broad discretion to determine whether an attorney holds a disqualifying adverse interest based on the facts of a particular case. *See BH&P*, 949 F.2d at 1315. An attorney has "an interest adverse to the estate" if it is found to have "a competing economic interest tending to diminish estate values or to create a potential or actual dispute in which the estate is a rival claimant. " *U.S. Trustee v. First Jersey Secs., Inc.,* 180 F.3d 504, 509 (3d Cir. 1999) (internal quotations omitted). The court has discretion to disqualify attorneys who possess a potential conflict of interest; but, where an actual conflict is found, the court must disqualify the attorney. *Congoleum*, 426 F.3d at 692. "[A] conflict is actual, and hence per se disqualifying, if it is likely that a professional will be placed in a position permitting it to favor one interest over an impermissibly conflicting interest." *In re Pillowtex,* 304 F.3d 246, 251 (3d Cir. 2002).

Upon consideration of the evidence introduced at the Disqualification Hearing, the Bankruptcy Court held that, by entering into the post-petition fee-sharing arrangement with Denison, Rubin & Rubin had: (i) "acquired a pecuniary interest adverse to the Debtors" (A870 & A872); (ii) "developed a predisposition that, under the circumstances, created a bias against the estate" that "carried with it the potential that Rubin [& Rubin] would favor deals that Denison found over other brokers to the potential detriment of the estate" (A870); and (iii) "rendered itself ineligible to serve as special counsel to the Debtors" (A872). Having held that

26

Rubin & Rubin "violat[ed] section 327(e)," which "outright prohibits the employment of attorneys who 'represent or hold any interest adverse to the debtors or to the estate,'" the Bankruptcy Court disqualified Rubin & Rubin. A872-A873.

Rubin and Rubin argues that the court abused its discretion in finding that there was any post-petition agreement in place which could be a disqualifying adverse interest as any fee was always subject to the approval of the court. (R&R Op. Br. 22-23). The Court disagrees. Although there is no requirement under § 327(e) that the court find the existence of an "agreement," the finding of a post-petition agreement here was not clearly erroneous, but rather a reasonable inference based on evidence produced at the Disqualification Hearing. Regardless of whether there was a formal "agreement," there is evidence to find Rubin & Rubin and Denison had a post-petition understanding that Rubin & Rubin would receive 30% of any commission Denison received. Thus, it was not an abuse of discretion to find this understanding—which gave Rubin & Rubin an interest that was at least potentially adverse to Debtors and the estate—was a disqualifying adverse interest with respect to a matter on which Rubin & Rubin was employed, *i.e.*, to procure refinancing of Debtors' secured debt. (A256 ¶ 2(v)).

Having found that Rubin & Rubin violated § 327(e) by obtaining a pecuniary interest that was adverse to Debtors and the estate on the matter for which it had been employed, the court did not abuse its discretion by disqualifying Rubin & Rubin. *See, e.g., West Delta Oil*, 432 F.3d at 355 (holding special counsel violated §

27

327(e) where it had an economic interest in transaction that was adverse to the estate regarding the matter for which it was employed); *Congoleum*, 426 F.3d at 692 (holding special counsel's employment was "contrary to section 327" where it had a pecuniary interest that "prevent[ed] it from being completely loyal to [the debtor's] interests"); *Rome*, 19 F.3d at 58 ("[I]f its fact-specific inquiry leads the bankruptcy court to conclude that an impermissible conflict of interest exists, available sanctions include disqualification[.]"); *In re Southern Kitchens, Inc.*, 216 B.R. 819, 829-34 (Bankr. D. Minn. 1998) (disqualifying special counsel due to adverse interest in violation of § 327(e), failure to disclose prior representation of creditor under Rule 2014(a), and violation of RPCs).

### b. Violation of Disclosure Requirements

Every law firm representing a debtor in bankruptcy must disclose (i) the amount and source of any compensation received or agreed to be paid; and (ii) all connections to creditors and parties in interest. 11 U.S.C. § 329(a); Fed. R. Bankr. P. 2014(a) & 2016(b); *see also* Del. Bankr. L.R. 2014-1(a) & 2016-1. These obligations begin with the application to be employed and continue throughout the case; failure to comply may, at the bankruptcy court's discretion, result in the law firm's disqualification. *See, e.g., Miller v. U.S. Trustee (In re Indep't Eng'g Co.)*, 197 F.3d 13, 17 (1st Cir. 1999); *BH&P*, 949 F.2d at 1317. An attorney's failure to disclose all compensation agreements and fee-sharing agreements under § 329(a), Rule 2016(b), and Local Rule 2016-1, and all connections with creditors and parties

in interest under § 327(e), Rule 2014, and Local Rule 2014-1(a), is a separate and

independent ground for disqualification under § 327. *See, e.g., Indep't Eng'g*, 197

F.3d at 17 (holding "the bankruptcy judge can impose various remedies, including

disqualification of counsel" for failure to comply with disclosure requirements); *In

re Crivello*, 134 F.3d 831, 836 (7th Cir. 1998) ("[C]ounsel who fail to disclose timely

and completely their connections proceed at their own risk because failure to

disclose is sufficient grounds to revoke an employment order[.]"); *BH&P*, 949 F.2d

at 1317 (affirming disqualification of counsel for disclosure violations).

       As there is no dispute that Rubin & Rubin's fee-sharing agreements with

Denison and representation of Moses Tucker were not disclosed, the court was

required to determine whether they were agreements and connections that Rubin &

Rubin was required to disclose under the Bankruptcy Code, Rules, and local rules.

After considering the evidence, the court held that they were and that

disqualification was warranted.  (A861-A863, A867-A869 & A872-A873).  For the

following reasons, that holding was not an abuse of discretion.

### i.   *Failure to disclose the agreements with Denison*

       In addition to the findings made regarding Rubin & Rubin's undisclosed

adverse interest, the Bankruptcy Court made the following findings regarding Rubin

& Rubin's failure to disclose its fee-sharing agreements with Denison:  The pre-

petition fee-sharing agreement was not disclosed in the application to employ Rubin

& Rubin and supporting verified statement, or in the supplemental disclosure filed

pursuant to the Fee-Shifting Order (A856); Rubin & Rubin did not disclose its post-petition fee-sharing agreement (A872); "Work done on behalf of the Debtors to close a refinancing transaction is certainly in 'contemplation of or in connection with' a Chapter 11 case that was filed to stave off a foreclosure" (A868); and the Fee-Shifting Order, "without a doubt, included disclosure requirements under section 329" (A869).

With respect to the pre-petition agreement, Rubin & Rubin admits to having one with Denison (R&R Op. Br. 18-22) but argues that it did not have to be disclosed because the pre-petition agreement was never fully performed. (*Id.* at 20-22). As the Lender-Appellees point out, this argument is contrary to the law which confirms that unperformed contracts are still contracts. *Weiss v. Northwest Broadcasting Inc.*, 140 F. Supp. 2d 336, 343-45 (D. Del. 2001) (finding that a contract that included a condition precedent to performance was a valid contract). Rubin & Rubin was obligated to disclose the pre-petition agreement regardless of whether the parties to that agreement ultimately performed it. Rubin & Rubin argues that there was no disclosure violation because there was never a "legal obligation to pay" under the pre-petition agreement. (R&R Op. Br. 20-21). Rubin & Rubin is not clear about who it thinks must have the legal obligation to pay—"the debtor" (*id.* at 20 & 21) or the "Appellant," *i.e.* Rubin & Rubin (*id.* at 22). As the UST correctly points out, however, the question here is not whether Rubin & Rubin agreed to pay Denison or whether Debtors agreed to pay anyone, but whether there

was an agreement for Denison to pay Rubin & Rubin a percentage of any commission he might receive.

Rubin & Rubin cites no authority for its "legal obligation" argument. Whether the debtor is obligated to pay is irrelevant, as disclosure must be made "whatever the source" (§ 329(a)) and whenever there is an agreement to share compensation "with any other entity" (Rule 2016(b)). Nothing in those statutes suggests that a fee-sharing agreement must only be disclosed when someone has incurred the "legal obligation to pay." Those provisions refer not only to an "agreement," but also to compensation and fee-sharing to which the attorney has merely "agreed." As the UST points out, if an agreement had to be disclosed only if it was written, formal, binding, exclusive, noncontingent, or a legal obligation—requirements Rubin & Rubin has attempted to graft onto § 329(a)—Congress would have included such language. As the statute includes no such limitations, Rubin & Rubin was required to disclose the pre-petition fee-sharing agreement.[10]

---

[10] As the UST points out, such a restrictive interpretation of "agreement" is at odds with the broad interpretation courts give § 329(a) and Rule 2016(b). *See, e.g., Henderson v. Kisseberth,* 273 F.3d 714, 720 (6th Cir. 2001) ("An attorney in a bankruptcy case has an affirmative duty to disclose fully and completely all fee arrangements and payments."); *Kun v. Mansdorf (In re Woodcraft Studios, Inc.),* 464 B.R. 1, 8 (N.D. Cal. 2011), *aff'd,* 558 F. App'x 755 (9th Cir. 2014) ("Pursuant to the disclosure rules of §§ 327 and 329 and Rules 2014 and 2016, the attorney has the duty to disclose all relevant information to the court, and may not exercise any discretion to withhold information."); *Land v. First Nat'l Bank of Alamosa (In re Land),* 116 B.R. 798, 806 n.8 (D. Colo. 1990) ("§ 329(a) of the Code broadly requires disclosure of fee arrangements for services rendered 'in contemplation of or in connection with the case'"), *aff'd,* 943 F.2d 1265 (10th Cir. 1991).

Second, with respect to the post-petition agreement, the duty to disclose payment and fee-sharing agreements "is a continuing one." *See Stewart*, 970 F.3d at 1258; 11 U.S.C. § 329(a), Fed. R. Bankr. P. 2016(b). The court found that Rubin & Rubin and Denison failed to disclose the post-petition agreement, in violation of § 329 and Rule 2016. (LA0005-7). The court based this finding on Mark Rubin's testimony and Denison's May 25 and 31, 2017 emails to Mark Rubin. (LA0005-7; *see also* LA1266; LA1268; LA2367-68 at 1145:18-1149:19). Based on that evidence, the court found that: (1) Mark Rubin agreed to the post-petition Agreement by phone; (2) Denison confirmed the post-petition agreement by email on May 31, 2017; and (3) Mark Rubin caused Debtors to reimburse Denison in partial performance of the post-petition agreement set forth in Denison's May 31, 2017 email. (LA0005-7).

Rubin & Rubin argues these findings were clearly erroneous because the court relied on Mark Rubin's *previous* sworn statements and Denison's writings regarding the pre- and post-petition agreements rather than their testimony proffered *after* the court raised questions that implicated their prior conduct and testimony. R&R argues that: (i) Denison was engaged "on a non-exclusive basis" (R&R Op. Br. 23-24); (ii) any payment to be received by Denison (and then shared with Rubin & Rubin) would first be "subject to approval of the owners and the Court" (*id.* at 23 & 24); and (iii) the agreement with Denison would not be "binding" until so approved (*id.* at 24). But the court found that these purported explanations were not

credible as they were made after-the-fact and were inconsistent with Mark Rubin's and Denison's documented conduct and communications concerning the pre- and post-petition agreements. (LA0006-07). The Court finds no clear error in this credibility determination. *In re Memorex Telex Corp.*, 242 B.R. 826, 830 (D. Del. 1999) (citing Third Circuit authority for the proposition that deference to the trial court is "most warranted" for credibility determinations).

Moreover, Mark Rubin's testimony at the Disqualification Hearing acknowledges such an understanding. (A563 at 276:5-9 ("I was going to recommend him for a fee" but "there was no agreement in specific, that would be determined by the Court.")). And at the Adversary Proceeding trial, when asked about the post-petition "70/30" commission split purportedly proposed by Denison (Adv. D.I. 573 at 1146:13-18 & 1149:21–1150:2), Mark Rubin testified that he: (i) "d[id not] recall" discussing the proposal with Denison (*id.* at 1146:22–1147:3); (ii) "was in agreement for a split of his brokerage fee" (*id.* at 1150:10-15) but "advised [Denison] that . . . whatever fee he got would be approved by the Court" (*id.* at 1152:2-4); and (iii) "agreed [to] . . . recommend a 1 percent fee but subject to approval by the Court" (*id.* at 1152:8-12). Given this testimony, the established pre-petition course of conduct, the email correspondence between Denison and Mark Rubin, and the fact that Mark Rubin facilitated Debtors' payment of Denison's expenses as he had proposed, it was reasonable for the Bankruptcy Court to infer that there was a post-petition fee-sharing agreement that should have been disclosed.

33

Bankruptcy Rule 2016(a) provides an additional requirement to disclose "what payments have theretofore been . . . promised to the applicant for services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so ... promised, .. whether an agreement or understanding exists between the applicant and any other entity for the sharing of compensation received or to be received for services in or in connection with the case, and the particulars of any sharing of compensation or agreement or understanding therefor[.]" Fed. R. Bankr. P. 2016(a). The local rules also require "[a]ny attorney representing the debtor under the Code, or in connection with such a case," to file the disclosures required by § 329(a) and Rule 2016(b). Del. Bankr. L.R. 2016-1. Failure to disclose the post-petition agreement violated these rules.

The Court finds no error in the determination that Rubin & Rubin had a post-petition fee-sharing agreement that should have been disclosed under § 329(a), Rule 2016(b), and Local Rule 2016-1.

### ii.    *Failure to disclose connections with Moses Tucker and Denison*

Lender-Appellees argue that this Court may affirm the Disqualification Order on the separate and independent basis that Rubin & Rubin did not challenge the Bankruptcy Court's determination that Rubin & Rubin (i) was required to but failed to disclose its pre-petition representation of Moses Tucker, one of Debtors' largest creditors, under Rule 2014(a); and (ii) filed false and/or materially deficient

disclosures and sworn statements relating to that representation. (Lender Br. 24-25). UST argues that Rubin & Rubin's brief did not address its failure to comply with Rule 2014(a), and it has forfeited this issue. *See Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 2003).

Bankruptcy Rule 2014(a) independently required Rubin & Rubin to disclose its "connections" with Denison and Moses Tucker. Rule 2014(a) requires all connections to be disclosed, "regardless of whether they are sufficient to rise to the level of a disqualifying interest[.]" *Waldron v. Adams & Reese, L.L.P. (In re Am. Int'l Refinery, Inc.)*, 676 F.3d 455, 465 (5th Cir. 2012). The duty to disclose all connections with creditors and parties in interest requires not only disclosures in the initial application, but also supplemental disclosures throughout the case as previously undisclosed connections are discovered or obtained. *See West Delta Oil*, 432 F.3d at 355; *see also* Fed. R. Bankr. P. 2014(a) (specifying disclosures required in initial application); Del. Bankr. L.R. 2014-1(a) (requiring supplemental affidavit "[p]romptly after learning of any additional material information relating to such employment (such as potential or actual conflicts of interest)"). Attorneys seeking employment under § 327 "cannot pick and choose which connections to disclose," and "must disclose those presently or recently existing, whether they are of business or personal in nature, which could reasonably have an effect on the attorney's judgment in the case." *Kagan v. Stubbe (In re El San Juan Hotel Corp.)*, 239 B.R. 635, 647 (B.A.P. 1st Cir. 1999).

The Bankruptcy Court made the following findings regarding Rubin & Rubin's failure to disclose its pre-petition representation of Moses Tucker: "Rubin & Rubin represented Moses Tucker . . . in connection with a possible pre-petition transaction involving" Debtors' sole asset (A859); Mark Rubin and Moses Tucker's witnesses both confirmed this representation in depositions during the Adversary Proceeding (A859-A860 & A861-A862); Moses Tucker is Debtors' property manager and "is also one of the Debtor's [sic] largest unsecured creditors" (A859); "Rubin & Rubin failed to disclose this representation," both in its verified statement filed in support of its application to be employed and after entry of the Fee-Shifting Order (A859, A860 & A873); "the evidence introduced at the Disqualification Hearing establishes the basis for [Mark] Rubin's assertion that he did, in fact, represent Moses Tucker" (A862); to assist Debtors in their refinancing efforts, Rubin & Rubin created a limited liability company of which one manager and three guarantors were principals of Moses Tucker (*id.*); and "Rubin & Rubin discussed with Moses Tucker the waiver of its claims against the Debtors in return for a potential ownership interest in" the Debtors' sole asset (*id.*).

The record supports the findings that Moses Tucker is Debtors' property manager and one of their largest pre-petition creditors. (*See* A492 at 205:7-8; A545 at 258:8-12). In addition, at least one principal of Moses Tucker was a potential investor in Debtors' building. (*See* A421-A424 & A529-A545). As a result, Rubin & Rubin's dealings with Moses Tucker were connections it had to disclose under

Rule 2014(a).  *See DeAngelis*, 2011 WL 4458779, at *6 (affirming disqualification

of attorney where "[t]he record amply reflect[ed] that [the attorney] failed to

disclose all of his extensive pre-petition connections to the Debtor or the Debtor's

creditors"); *see also Southern Kitchens*, 216 B.R. at 829-34 (disqualifying special

counsel due to adverse interest in violation of § 327(e), failure to disclose prior

representation of creditor under Rule 2014(a), and violation of RPCs).  The Court

finds no abuse of discretion in the determination that Rubin & Rubin was required to

disclose its connections with Moses Tucker.

　　Similarly, Rubin & Rubin's pre- and post-petition dealings with Denison were

disclosable connections with a party in interest.  In the Third Circuit, "party in

interest" is viewed as "an elastic concept" that is given a "broad, flexible

definition," and it includes anyone with "a practical stake in the outcome of the

proceedings." *In re Amatex*, 755 F.2d 1034, 1041-42 (3d Cir. 1985).  Rubin &

Rubin was required to disclose its post-petition connection with Denison as a party

in interest as he hoped to get paid from the estate if he located a lender for Debtors'

refinancing efforts.  In addition, Rubin & Rubin admits that it had a pre-petition fee-

sharing agreement with Denison shortly before the bankruptcy, which should have

been disclosed.  (R&R Op. Br. 21).  And, in his deposition and trial testimony in the

Adversary Proceeding, Mark Rubin described Denison as Debtors' "agent" for

attorney-client privilege purposes.  (Adv. D.I. 573 at 1143:13–1144:4).  On this

record, the court did not clearly err by finding that Denison was a party in interest

whose connections with Rubin & Rubin should have been disclosed under Rule 2014(a).

Given the undisputed fact that Rubin & Rubin did not disclose its fee-sharing agreements with Denison or its pre-petition representation of Moses Tucker, the Bankruptcy Court did not abuse its discretion in disqualifying Rubin & Rubin on the basis of its violation of Rule 2014(a).

### c. Failure to Comply with RPC 1.8(a)

The Bankruptcy Court made the following findings regarding Rubin & Rubin's failure to comply with RPC 1.8(a): Mark Rubin did not disclose the post-petition fee-sharing agreement to Debtors, obtain their "informed written consent to enter into the agreement," or "advise[] the[m] of the desirability of seeking the advice of independent counsel" (A871); Rubin & Rubin's post-petition fee-sharing agreement "could not have been in the contemplation of the Debtors when they agreed to Rubin & Rubin's retention" pre-petition (A871-A872); and "the terms of the [April 2016 representation] agreement are insufficient to satisfy the stringent requirements of [RPC] 1.8 to obtain a knowing waiver" (A872). The Court finds support in the record for each of these findings, and they are not clearly erroneous. *See Fellheimer*, 57 F.3d at 1223.

The Bankruptcy Court properly applied RPC 1.8(a) to these facts. Under the local rules, all attorneys appearing before the Bankruptcy Court are bound by the RPCs. Del. Bankr. L.R. 9010-1(f). The Third Circuit has explained that attorneys

38

in bankruptcy cases must comply with the RPCs if they hope to be employed under

§ 327. *See Congoleum*, 426 F.3d at 688-89 & 691; *see also In re Roper &*

*Twardowsky, LLC*, 566 B.R. 734, 746-47 (Bankr. D.N.J. 2017). Here the court

applied RPC 1.8(a), which prohibits a lawyer from "knowingly acquir[ing] a[] ..

pecuniary interest adverse to a client unless": (i) "the ... terms on which the lawyer

acquires the interest are .. fully disclosed and transmitted in writing in a manner that

can be reasonably understood by the client"; (ii) "the client is advised in writing of

the desirability of seeking and is given a reasonable opportunity to seek the advice

of independent legal counsel on the transaction;" and (iii) "the client gives informed

consent" in writing. Rubin & Rubin does not dispute that RPC 1.8(a) is applicable

to the determination of whether disqualification was warranted.

While not automatic, "disqualification ordinarily is the result of a finding that

a disciplinary rule prohibits an attorney's appearance in a case." *Miller*, 624 F.2d at

1201 (disqualifying entire law firm from representing criminal defendant because

one attorney was disqualified). As a result, the Bankruptcy Court has the discretion

to disqualify an attorney on the separate and independent ground of violation of the

RPCs. *See, e.g., id.* at 1201-03 (affirming disqualification of attorney for violating

Disciplinary Rules of the Code of Professional Responsibility); *Bagdan*, 140 F.R.D.

at 653, 659-60 (disqualifying special counsel employed under § 327 for having a

potential conflict of interest under RPC 1.7(b) that could "materially interfere with

the lawyer's independent professional judgment in considering alternatives or

foreclose courses of action that reasonably should be pursued on behalf of the client" where the record did not reflect that the client gave informed consent).

The Third Circuit has held as to concurrent conflicts that "the effect of a waiver, particularly a prospective waiver, depends upon whether the clients have given truly informed consent"—and the failure to obtain effective waivers is a violation of the RPCs. *See Congoleum*, 426 F.3d at 691. As the court noted (A872), because Rubin & Rubin was § 327(e) special counsel to a bankruptcy estate, any waiver it might purport to have obtained from Debtors would likely be "not effective." *Id.* at 692; *Roper*, 566 B.R. at 747-49 (holding "proper waiver … likely could not be done in this type of bankruptcy scenario").

Upon consideration of the evidence introduced at the Disqualification Hearing, the Bankruptcy Court held that, "[b]y entering into the fee-sharing agreement without obtaining explicit written waivers and advising the Debtors they should consult with other counsel, Rubin & Rubin violated its ethical obligations under [RPC] 1.8." (A873). Rubin & Rubin's sole argument is that it never developed a bias against the estate in violation of RPC 1.8(a) because there was no post-petition agreement. (R&R Op. Br. 26). As the Bankruptcy Court found that there was a post-petition fee-sharing agreement, and that finding is not clearly erroneous, Rubin & Rubin's argument fails. The court did not abuse its discretion in disqualifying Rubin & Rubin on the basis of its violation of RPC 1.8(a).

## 2. The Bankruptcy Court Did Not Abuse its Discretion by Denying Compensation to Rubin & Rubin

The UST argues that the grounds that support Rubin & Rubin's disqualification also support the denial and return of all fees. The Court agrees. A law firm's disqualification under § 327 for a conflict of interest generally results in the denial and return of all fees. *See Indep't Eng'g,* 197 F.3d at 17; *see also* 11 U.S.C. § 328(c). In addition, denial and return of all fees is the default sanction for disclosure violations. *See, e.g., SE Property Holdings, LLC v. Stewart (In re Stewart)*, 970 F.3d 1255, 1258 (10th Cir. 2020). Violations of the RPCs can also result in the denial and return of all fees. *See, e.g., In re Santos*, 616 B.R. 332, 353-54, 357 (Bankr. N.D. Tex. 2020); *In re 38-36 Greenville Ave., L.L.C.*, 2020 WL 1680724, at *9, 12-13, 14 (Bankr. D.N.J. Apr. 6, 2020).

Having found that Rubin & Rubin held an interest adverse under § 327(e), the Bankruptcy Court was authorized by § 328(c) to, in its discretion, deny Rubin & Rubin compensation for its services rendered and reimbursement of its expenses. *See Fellheimer*, 57 F.3d at 1228-29 (affirming denial of fees under § 328(c) even though the bankruptcy court did not specifically rely on that provision); *see also West Delta Oil*, 432 F.3d at 354 (reversing award of fees to special counsel that had disqualifying adverse interest under § 327(e)); *Crivello*, 134 F.3d at 837 (holding bankruptcy courts have discretion to deny fees under § 328(c) where professional fails to meet requirements for employment under § 327).

Similarly, the Bankruptcy Court had the discretion to deny Rubin & Rubin's fees, and order it to return fees it already received, due to its failure to comply with the disclosure provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules. *See, e.g., Stewart*, 970 F.3d at 1267 (holding that "the default sanction" for an attorney's failure to make the mandatory disclosures should be denial and return of all fees); *Kisseberth*, 273 F.3d at 721 (affirming order directing return of fees for disclosure violations). The denial and return of all fees is warranted "even if proper disclosure would have shown that the attorney had not actually violated any Bankruptcy Code provision or any Bankruptcy Rule," if nondisclosure was "negligent or inadvertent," and if the nondisclosure "did not create any actual conflict of interest." *Park-Helena*, 63 F.3d at 881-82.

Denial and return of fees is also warranted for failure to comply with the RPCs. *See, e.g., Santos*, 616 B.R. at 353-54, 357 (ordering return of fees for, among other things, violating RPCs); *38-36 Greenville Ave.*, 2020 WL 1680724, at *9, 12-13, 14 (ordering denial and return of all fees for, among other things, attorney's "blatant disregard of" the RPCs).

The Bankruptcy Court's decision denying Rubin & Rubin's compensation and ordering the return of fees already received is reviewed for abuse of discretion. *Zolfo, Cooper*, 50 F.3d at 257. Although Rubin & Rubin describes complete denial of fees as "draconian" (R&R Op. Br. 27 n.7 and 31 n.9), "[t]he disclosure rules are applied literally, even if the results are sometimes harsh." *Park-Helena*, 63 F.3d at

42

881. Because "[t]he attorney's duty of disclosure is that of a fiduciary[,] . . . [c]ourts have found violations of the duty to be intolerable, and the sanctions imposed have been harsh, going far beyond the need to compensate for the damage done or even to deter the specific offender." *Stewart*, 970 F.3d at 1263-64.

### 3. The Bankruptcy Court Did Not Abuse its Discretion by Ordering Rubin & Rubin to Reimburse Debtors for Payment to Denison

In connection with this ruling, the court found that Debtors' unauthorized payment to Denison was made at the direction of Mark Rubin. (A859, A872). As a result, the court directed Rubin & Rubin to reimburse the bankruptcy estate for the amount of the unauthorized payment. That holding was not an abuse of discretion.

The $11,400 payment, made by Debtors at the direction of Mark Rubin, violated several Bankruptcy Code provisions that require court authorization before such payments can be made from the estate. However classified, the payment to Denison required prior bankruptcy court approval. If it was an "actual, necessary cost[] and expense[] of preserving the estate," payment could only be made after court approval after notice and a hearing. *See* 11 U.S.C. § 503(b)(1)(A). As refinancing their loan is not in the ordinary course of Debtors' business, they could not pay a loan broker's due diligence costs without obtaining court approval after notice and a hearing. *See* 11 U.S.C. § 363(b). If the payment was made in the ordinary course of business, any use of funds that serve as a creditor's collateral cannot be paid unless the creditor consents or the court authorizes the payment after

43

notice and a hearing. *See* 11 U.S.C. § 363(c)(2).

Here, Debtors did none of those things before making the payment to Denison. The Bankruptcy Court found that Mark Rubin had instructed that all communications regarding Denison should go through him, and further found that reimbursement of Denison's out-of-pocket costs was one of the "deal points" in Rubin & Rubin's post-petition fee-sharing agreement with Denison. (A859). Based on this finding, the Bankruptcy Court inferred that "[Mark] Rubin is the only person who would have known about the agreement, and the only one who could have directed that the payment be made out of the Debtors' DIP accounts." (*Id*). These findings are not clearly erroneous.

Rubin & Rubin does not dispute that the payment was made at Mark Rubin's direction; rather, Rubin & Rubin argues that Mark Rubin did not think the payment was "anything inappropriate." (R&R Op. Br. 25 n.6). This contention is not only beside the point but also belied by the record, as Rubin & Rubin claims to have told Denison many times that court authorization would be needed before Denison could receive any payment. (*See* A858; R&R Op. Br. 23-24).

Debtors owed a fiduciary duty to the bankruptcy estate and creditors. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 (1985). As court-appointed special counsel, Rubin & Rubin owed a fiduciary duty to ensure that Debtors carried out their fiduciary duty, and the bankruptcy court was required to "police the fiduciaries . . . who are responsible for managing the debtor's estate in

44

the best interest of creditors." *See Geruschat v. Ernst Young LLP (In re Seven Fields Dev. Corp.),* 505 F.3d 237, 261 (3d Cir. 2007) (internal quotations omitted). By directing Debtors to pay Denison without court authorization, Rubin & Rubin breached its fiduciary duty. *See In re Grasso*, 586 B.R. 110, 153, 163 (Bankr. E.D. Pa. 2018) (holding debtor's attorney "had a duty to inform his client about the general obligations and limitations on debtors," and denying fees where attorney, among other things, directed debtor to use cash collateral without court authorization) (internal quotation omitted).

Pursuant to § 105(a), the Bankruptcy Court was authorized to "issue any order . . . that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. As Rubin & Rubin instructed Debtors to make the unauthorized payment to Denison, ordering Rubin & Rubin to reimburse the bankruptcy estate for money it should never have paid was not an abuse of discretion.

### 4.   Rubin & Rubin's Remaining Arguments Are Unavailing

#### a.   Reliance on Advice of Debtors' Counsel

Rubin & Rubin argues that the Bankruptcy Court erred by failing to consider the "mitigating circumstance" that Rubin & Rubin relied on Debtors' bankruptcy counsel for advice regarding its own disclosure obligations and cites Mark Rubin's testimony in support. (R&R Op. Br. 27-31). Having previously recognized that Rubin & Rubin "was not accustomed to the stringent disclosures mandated by the Bankruptcy Rules" (Fee-Shifting Order at 6), Rubin & Rubin argues that the court

45

"erred in not considering the role of section 327(a) counsel when ordering the Appellant's disqualification and the disgorgement of its fees in connection with alleged disclosure violations." (R&R Op. Br. 29-20).

Rubin & Rubin's attempt to blame its disclosure violations on the advice of Debtors' bankruptcy counsel lacks merit. As the UST correctly points out, there is no "reliance on advice of counsel" defense to disclosure violations under the Bankruptcy Code and Rules. Rather, the duty to disclose lies with the professional person being employed. "Compliance with Rule 2014 is ordinarily the responsibility and burden of the professional absent a showing that the professional is 'a person, completely ignorant of the requirements of the Bankruptcy Code and without legal representation, justifiably relied on the superior expertise of another.'" 9 Collier on Bankruptcy ¶ 2014.07 (16th ed.) (quoting *F/S Airlease*, 844 F.2d at 107). Similarly, the duty to disclose compensation and fee-sharing agreements is imposed separately on "every attorney employed by the debtor." *Id.* at ¶ 2016.16. Rubin & Rubin cites no authority in support of its defense.

### b.   Evidentiary Determinations

Rubin & Rubin's evidentiary arguments are also unavailing. Rubin & Rubin argues that the court "committed reversible error" at the Disqualification Hearing by: (i) admitting into evidence transcripts of deposition testimony of Denison and deposition and trial testimony of Moses Tucker's representative Lori McGhee taken during the Adversary Proceeding; and (ii) preventing Thomas Francella, Debtors' §

327(a) bankruptcy counsel from testifying.  (*See* R&R Op. Br. 26-31).  The court's

decision to admit or exclude evidence is reviewed for abuse of discretion.  *See*

*Mathis*, 264 F.3d at 326-27.

Rubin & Rubin argues the transcripts should have been excluded as hearsay

because: (a) they "contained testimony from another matter to which [Rubin &

Rubin] was not a party"; and (b) when McGhee and Denison testified "[Rubin &

Rubin] was not on notice of any claims advanced in the [Disqualification Motion],"

and so "did not have the opportunity to examine Ms. McGhee and Denison on

matters relevant to the Disqualification Hearing."  (R&R Op. Br. 27).

Both the Lender-Appellees and the UST argue that the transcripts were admissible

under the hearsay exception of Federal Rules of Evidence ("FRE") 804 and Federal

Rule of Civil Procedure ("FRCP") 32.  The Court agrees.

FRCP 32 "constitutes an independent exception to the hearsay rule" and

"permits the deposition of a witness who is more than one hundred miles from the

courthouse to be used for any purpose 'against any party who was present or

represented at the taking of the deposition . . . .'"  *U.S. v. Vespe*, 868 F.2d 1328,

1339 (3d Cir. 1989) (quoting Fed. R. Civ. P. 32).  Here, it is undisputed that

McGhee and Denison live in Arkansas and Florida, respectively, and are therefore

more than one hundred miles from the Bankruptcy Court.  (LA1917 at 144:12-13;

LA1041; LA2791, LA2795 at 27:12-28:17, 42:1-43:1).  It is also undisputed that

Appellant was present at and questioned witnesses at both depositions.  (*See*

47

LA1754; LA1619; LA2570.)

FRE 804 permits the use of testimony of an unavailable witness if the party against which the testimony is offered had "an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Here,  it is undisputed that both McGhee and Denison were unavailable to testify at the Disqualification Hearing because they were more than 100 miles from Wilmington and efforts to secure their attendance were unsuccessful. (*See* A314-A315 at 27:15–28:5 & 28:9–10; A329-A330 at 42:5–43:1).  The testimony was given either at a trial or in a lawful deposition; McGhee testified in a deposition and at the trial in the Adversary Proceeding, and Denison testified at two depositions, one of which was a trial deposition.  (A315 at 28:13-15 & A317-A318 at 30:18–31:1; A330 at 43:5-13).[11] This prior testimony was admissible under FRE 804(b)(1) because Rubin & Rubin had ample opportunity (and did) examine both McGhee and Denison at their depositions.  Indeed, it was Mark Rubin (at McGhee's deposition) and Guy Rubin (at the trial) who elicited McGhee's testimony that Rubin & Rubin had represented Moses Tucker pre-petition.  (*See* A318-A319 at 31:24–32:1 & A320-A321 at 33:22–34:20).  Mark Rubin did so for the express purpose of correcting her testimony, obtained earlier in the deposition from Lender-Appellees' counsel, that there was no

---

[11] McGhee was also recovering from recent surgery, making her prior testimony admissible under FRCP 32(a)(4)(C) and Federal Rule of Evidence 804(a)(4).  (*See* A315 at 28:6-7 & 10-12).

such representation. (*Id.*) Appellants similarly had an opportunity to and did cross-examine Denison concerning the very same fee-sharing matters that are at issue here. (A330 at 43:17-23 & A334 at 47:1-4; LA1692, 294:11-20, 295:7-18). Appellants knew that McGhee would be questioned about Rubin & Rubin's prior dealings with Moses Tucker; she was presented as Debtors' witness by Guy Rubin to address Moses Tucker's role in Debtors' financing attempts. (A317-A318 at 30:11-31:9). Appellants also knew Denison would be questioned about his fee-sharing agreements with Rubin & Rubin; indeed, that was the reason the trial deposition was taken. (A331 at 44:6-23 & A334 at 47:1-8). Appellants had the same motive when the prior testimony was taken as they do now—to ensure that McGhee's and Denison's testimony was truthful.

Given this record, there is no basis for Appellants to argue that they lacked the motive or opportunity to obtain testimony from McGhee and Denison on the matters at issue. The Court did not abuse its discretion by allowing the admission into evidence of prior deposition and trial testimony of McGhee and Denison under either FRCP 32 or FRE 804(b)(1).

Nor did the court abuse its discretion by excluding the Francella testimony. As Lender-Appellees correctly point out, the court issued a pre-hearing order which provided that: (1) Rubin & Rubin had to disclose the anticipated substance of its Disqualification Hearing witnesses' testimony by July 20, 2020 so that other parties had sufficient time to determine whether to depose Rubin & Rubin's witnesses

before the Disqualification Hearing; and (2) the court would "consider motions in limine at the [Disqualification Hearing] to prevent the testimony of any witness for whom a reasonable request for a short (two hour) telephone deposition was denied prior to the hearing." (LA1065).  The record reflects that, consistent with the order, Lender-Appellees requested Francella's two-hour remote deposition in advance of the Disqualification Hearing.  (LA2802-03 at 71:3-77:20).  Despite the order describing the parties' obligations, and advising of the consequences of non-compliance, Rubin & Rubin did not produce Francella for a deposition before the Disqualification Hearing.  Lender-Appellees filed a motion in limine to bar Rubin & Rubin from calling Francella as a witness.  (LA1047; LA2802-2808, at 70:2-96:17; LA1069).  The court granted that motion given its clear pre-hearing order.  Pursuant to Federal Rule of Civil Procedure 16, a trial court may "issue any just orders" if a party or its attorney "fails to obey a scheduling or other pretrial order."  Fed. R. Civ. P. 16(f)(1)(C); *see also McCann v. Miller*, 502 Fed. Appx. 163, 171-72 (3d Cir. 2012) ("The trial court's exclusion of testimony because of the failure of counsel to adhere to a pretrial order will not be disturbed on appeal absent a clear abuse of discretion.").

Rubin & Rubin argues Francella was "not available" for a deposition, but it cites no evidence to support this assertion.  (R&R Op. Br. 27-31)  The record supports a finding that no effort was made to produce Francella.  (*See* LA1047-66). Rubin & Rubin argues that it was precluded from presenting certain evidence

through Francella. (R&R Op. Br. 27-31). Rubin & Rubin was required, however, to make an offer of proof on that issue. *See* Fed. R. Evid. 103(a)(2) (a party may only claim error in a ruling to exclude evidence "if the error affects a substantial right of the party and . . . a party informs the court of" the substance of the excluded evidence by way of an offer of proof); *Northeast Women's Ctr., Inc. v. McMonagle*, 868 F.2d 1342, 1352-53 (3d Cir. 1989) (rejecting argument regarding excluded evidence on appeal where defendants made no offer of proof of the evidence they desired to present). Rubin & Rubin did not do so and confirmed at the Disqualification Hearing that it did not have any "agreed proffer" (presumably, offer of proof) with respect to Francella's testimony. (LA2805 at 83:11-12)[12]

### C.    RLA's Appeal of the Disqualification Order

### 1.    RLA's Waiver of Arguments on Appeal

RLA does not dispute that the record below warranted disqualification and the denial of fees. RLA argues that the Disqualification Order should have been limited to disqualifying and denying the fees of I. Mark Rubin, P.A. on the new theory that Mark Rubin alone, and not Guy Rubin, was responsible for all of the violations of the Bankruptcy Code, Bankruptcy Rules, and RPCs found by the Bankruptcy Court.

---

[12] Counsel merely stated that he "th[ought]" that Mr. Francella had knowledge of: (1) "discussions . . . about the respective role of the [Rubin & Rubin] firms"; (2) "Denison and disclosures made about Seth Denison in this case"; (3) "cash collateral orders"; and (4) "Moses Tucker, their role as property manager and the disclosures about and fees paid to Moses Tucker." (LA2805 at 83:11-84:14).

As Lender-Appellees and the UST each point out, RLA (and, by extension, Guy Rubin) failed to preserve those issues for appellate review by not presenting them to the bankruptcy court. *See In re Tribune Media Co.*, 902 F.3d 384, 400 (3d Cir. 2018) ("[T]his contention is waived, as [the appellant] never presented it to the Bankruptcy Court."). Guy Rubin knew of the Disqualification Hearing, as he was a potential witness (A385-A388 at 98:9–101:1, A511-A512 at 224:23–225:2 & A700 at 377:22-24) and discussed strategy with Rubin & Rubin's attorney (A613-A614 at 326:6–327:10). He could have ensured that Rubin & Rubin's attorney raised these issues, hired an attorney to raise the issues on behalf of himself and RLA, or raised them himself *pro se*. The failure of Guy Rubin and RLA to participate at the Disqualification Hearing to ensure that these issues were addressed by the Bankruptcy Court dooms this appeal. *See In re Smith*, 757 F. App'x 77, 81 (3d Cir. 2018) (holding appellant "did not preserve for review any of the arguments [against the conversion of her bankruptcy case] that she presented to the District Court because she did not appear at the conversion hearing to register any objections").

Moreover, the law firm of Rubin & Rubin—of which RLA is part—affirmatively represented to the Bankruptcy Court that it was not making any such argument. (*See* LA0963 ("Lender [Appellees] speculate . . . that Rubin & Rubin will respond to the [Disqualification] Motion by attempting to separate the [Rubin & Rubin] firm. No such 'tactic' has been deployed in response to the [Disqualification] Motion, or in response to the Joinders...")). Appellants therefore waived its ability

to argue on appeal that the Disqualification Motion and/or Order should not apply to RLA. *See In re Phila. Newspapers, LLC*, 418 B.R. 548, 575 n. 27 (E.D. Pa. 2009) (refusing to consider argument debtors failed to raise in bankruptcy court).

Assuming RLA's arguments were not waived, they must be rejected. RLA argues that the court: (i) should have limited its findings to I. Mark Rubin, P.A., rather than "making findings of improper conduct against 'Rubin & Rubin'" (RLA Op. Br. 7-9); (ii) should not have "revok[ed] the retention of[] Guy Rubin and [RLA] without finding any improper conduct by [them]" (*id.* at 9); and (iii) should not have "order[ed] the disgorgement of attorneys' fees, costs and expenses against Guy Rubin and [RLA] without finding any improper conduct by [them]" (*id.* at 10).

### 2.   Disqualification of RLA

RLA argues the court erred by not limiting the scope of the Disqualification Order to I. Mark Rubin, P.A. The decision to disqualify the entire Rubin & Rubin law firm rather than just one lawyer or component part is reviewed for abuse of discretion. *Miller,* 624 F.2d at 1203 ("The proper scope of a disqualification order is a matter committed to the [trial] court's discretion"). Where, as here, the attorney or firm component that contests the scope of a disqualification order never raised its concerns at the trial court level, there is no basis on which an appellate court can determine whether the trial court abused its discretion.

Setting aside that RLA failed to raise its arguments below, its arguments fail. RLA argues that "Mr. I. Mark Rubin and Mr. Guy Rubin own their legally distinct

law firms" and that Guy Rubin and his firm therefore purportedly cannot be subjected to the Disqualification Order." (RLA Op. Br. 8-9). It is difficult to comprehend how RLA's attorneys could take this position before the Court given Appellants' attorneys' declarations, sworn testimony, and other affirmative representations to the Bankruptcy Court that RLA and I. Mark Rubin, P.A. were a single law firm under Rubin & Rubin's name. Having asked the bankruptcy court to treat it as part of a single firm called "Rubin & Rubin" to avoid disqualification in 2019, RLA now seeks to distance itself from its prior litigation position to avoid disqualification. As the UST correctly points out, its identity cannot change as it finds convenient—it either is part of the Rubin & Rubin law firm or it is not.

Debtors retained Rubin & Rubin—not I. Mark Rubin, P.A. or RLA—to represent them. Rubin & Rubin filed fee applications in the Bankruptcy Court, and Mark and Guy Rubin signed pleadings, declarations, and other filings in the Bankruptcy Court identifying themselves as attorneys at "Rubin & Rubin, P.A.". (*See, e.g.,* LA0069 ¶ 1; LA0906 ¶ 1; LA0699). Having found Rubin & Rubin—of which RLA is a part—was disqualified, the court did not abuse its discretion by not limiting the Disqualification Order to I. Mark Rubin, P.A. as RLA now requests.

RLA does not dispute the Bankruptcy Court's holding that Rubin & Rubin had a disqualifying conflict of interest—it simply blames Mark Rubin for the conflict and disclosure violations and seeks to distance itself from Rubin & Rubin for purposes of the Disqualification Order. To that end, RLA argues that the court

did not make "specific findings" that it could impute Mark Rubin's conduct to RLA. (RLA Op. Br. 8-9).  This argument fails for several reasons.

First, there was no need to "impute" conduct to Guy Rubin or RLA where, as here, Guy Rubin and RLA represented Debtors together with Mark Rubin during all time periods that are relevant to this case.  Contrary to RLA's arguments, the court did not find that Mark Rubin alone was culpable; it found that "Rubin & Rubin acquired a pecuniary interest adverse to Debtors through the [post-petition] agreement to split the Denison Commission." (A870).  It further found that the failures to disclose occurred even after the court directed Guy and Mark Rubin personally to correct Rubin & Rubin's disclosures.  (A856, A860 & A890).

Second, even if the court's findings were limited to Mark Rubin, the general rule has long been that the disqualification of one attorney from representing a debtor or trustee under § 327 results in the disqualification of the entire law firm. *See In re Phila. Athletic Club, Inc.*, 20 B.R. 328, 338 n.11 (E.D. Pa. 1982); *In re Essential Therapeutics, Inc.*, 295 B.R. 203, 209-11 (Bankr. D. Del. 2003); *In re Envirodyne Indus., Inc.*, 150 B.R. 1008, 1017 (Bankr. N.D. 1993).  This rule applies not only to law firms with a handful of attorneys, but also to firms with hundreds of attorneys—without the court having to make specific findings regarding each of the many attorneys adversely affected.  *See Essential Therapeutics*, 295 B.R. at 211 (disqualifying entire Bingham McCutchen global law firm); *Envirodyne*, 150 B.R. at 1017-18 ("The 400 plus attorneys at Cleary Gottlieb must be considered as one in

any conflict of interest analysis."); 1 Collier on Bankruptcy ¶ 8.03[10] (16th ed. 2020) (rule of imputed disqualification "applies regardless of the size of the firm").

Finally, RLA has provided no sound factual or legal basis for its argument that the Bankruptcy Court improperly "imputed" one party's sanctionable conduct to another. (RLA Op. Br. 7-9). For reasons set forth in the UST's brief, the imputation cases cited by RLA are inapposite. (*See* UST RLA Br. at 36-38). The Bankruptcy Court did not abuse its discretion by disqualifying the entire Rubin & Rubin firm without excluding RLA and Guy Rubin from the scope of its holding.

### 3. Revocation of Guy Rubin and RLA's "Retention"

RLA further argues that the court should not have "revok[ed] the retention of[] Guy Rubin and [RLA] without finding any improper conduct by [them]" (RLA Op. Br. 2, 9). As the UST correctly points out, RLA had no "retention" to revoke because it was never separately employed as special counsel under § 327(e). And RLA cites no supporting authority for the suggestion that it might somehow be able to continue rendering special counsel services to Debtors after Rubin & Rubin's disqualification. Only an attorney employed "with the court's approval" can serve as Debtors' special counsel. 11 U.S.C. § 327(e). Debtors' application to employ special counsel filed under Rule 2014(a) and the supporting verified statement referred only to Rubin & Rubin as the "person to be employed," and did not mention the existence of RLA at all. (A230-A251). Similarly, the order authorized the employment of Rubin & Rubin as the attorney being employed as Debtors' "special

56

corporate and litigation counsel," and did not mention Guy Rubin or RLA as

"persons" being employed under § 327(e).[13] (A255).

### 4.   Denial and Disgorgement of Fees and Expenses

RLA argues that the Bankruptcy Court abused its discretion by denying Rubin

& Rubin's fees, and ordering it to return the fees it had already been paid, without

limiting the scope of its holding to exclude RLA.   RLA complains that it has

"advanced tens of thousands of dollars in litigation expenses" and "expended well

over $1 million in hourly legal services over the course of two years in good faith"

that it will not be paid if the Disqualification Order applies to it.

The Bankruptcy Court did not order RLA to disgorge "its" fees and costs

because RLA did not have any fees and costs—all fees and costs were those of

Rubin & Rubin, because that was the only attorney employed as special counsel

under § 327(e).   Under § 330(a), "a professional person employed under section

---

[13] As the UST further explains, under Rule 2014(b), "any partner, member, or
regular associate" of "a law partnership or corporation [] employed as an attorney"
under § 327 "may *act* as attorney . . . so employed without further order of the
court." Fed. R. Bankr. P. 2014(b) (emphasis added).   But that does not mean that §
327 employment of the firm constitutes § 327 *employment* for each of the firm's
attorneys.   While a law firm is employed under § 327, its attorneys can render
services to the bankruptcy estate; but once the law firm ceases to be employed under
§ 327, its attorneys may no longer render services to the bankruptcy estate.   RLA's
services pursuant to § 327(e) have all been rendered as attorneys in the law firm of
Rubin & Rubin; its attorneys can no longer render those services now that Rubin &
Rubin has been disqualified.   Only attorneys employed "with the court's approval"
can serve as special counsel, and RLA never obtained such approval.

327" may seek reasonable compensation from the bankruptcy estate for services rendered and reimbursement of reasonable expenses. "A debtor's attorney not engaged as provided by § 327 is simply not included within the class of persons eligible for compensation" under § 330(a). *Lamie*, 540 U.S. at 534. RLA was not separately employed under § 327 and has no ability to receive separate compensation for its services under § 330 following Rubin & Rubin's disqualification. As the Court has already determined that denial of Rubin & Rubin's fees was not an abuse of discretion, RLA's argument fails.

The fact that Rubin & Rubin's disqualification will result in RLA's inability to obtain fees for services rendered and reimbursement of its expenses is no reason to reverse the Disqualification Order. Section 327(e) imposes an explicit requirement that cannot be relaxed for equitable reasons. *See Law v. Siegel*, 571 U.S. 415, 421 (2014) ("'[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of' the Bankruptcy Code." (quoting *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988)). Similarly, "[t]he disclosure rules are applied literally, even if the results are sometimes harsh." *Park-Helena*, 63 F.3d at 881.

## IV.   CONCLUSION

For the reasons discussed above, the Court will affirm the Fee-Shifting Order and the Disqualification Order. The Court will issue an Order consistent with this Opinion.